```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA
                        ATLANTA DIVISION


UNITED STATES OF AMERICA,          :
                                   :    CRIMINAL ACTION NO.
                                   :
      v.                           :    1:12-CR-297-TWT-ECS
                                   :
                                   :
CORA CADIA FORD,                   :
a/k/a CORA ELDER,                  :
a/k/a CORA FORD ROYAL              :
                                   :
      Defendant.                   :
```

**REPORT AND RECOMMENDATION**
**OF THE MAGISTRATE JUDGE**

**I.**
**Introduction**

Defendant is charged in this case in ten counts of mail fraud based upon an alleged fraudulent scheme to make and file fraudulent claims for tax refunds using names and Social Security numbers of certain individuals without their knowledge and consent. [Doc. 1]. Defendant is also charged in ten counts of aggravated identity theft arising out of the same circumstances, and in ten counts of false claims made and presented to the Internal Revenue Service also in connection with filing such false and fraudulent federal income tax returns. [Id.]. This case is presently before the court on Defendant's preliminary motion to suppress in court identification. [Doc. 16]. The motion came on for hearing on December 4, 2012 and

has been fully briefed. The motion is, therefore, ready for a report and recommendation.

Three witnesses—Norman Ponder, Roberto Perez, and Sharon Fuller—identified Defendant from a photographic array presented to them by federal agents investigating the case. Defendant contends that the identifications were unduly suggestive and unreliable and should be suppressed as in violation of due process of law. [Doc. 27 at 5]. The government opposes the motion, contending that the photographic arrays as presented were not unduly suggestive and, in the case of Ms. Fuller, even if suggestive, her identification was otherwise reliable. [Doc. 28 at 6, 8]. For the reasons stated herein, the undersigned finds that the arrays were not unduly suggestive, but, even if the manner in which the identification was made was suggestive as to Ms. Fuller, the identification was nonetheless reliable. Accordingly, **IT IS RECOMMENDED** that the motion to suppress, [Doc. 16], be **DENIED**.

## II.
## Factual Findings

### A.  Mr. Ponder and Mr. Perez

The testimony at the hearing showed that Mr. Ponder met with Agent Richard Thomas at the United States Attorney's office in the presence of Assistant United States Attorney Thomas Krepp on August

2

13, 2012. [T. 24, 38].[1]  At that time Mr. Ponder's name was on a fraudulent tax return prepared by a tax service affiliated with Defendant. [T. 9].  Mr. Ponder was presented with a photo array of six pictures and picked Defendant out as being in picture number four on the array. [T. 11].  Defendant was identified by Mr. Ponder as the person to whom Mr. Ponder gave his identifying information. [T. 13].  The array was admitted as government's Exhibit 2. [T. 12]. There was no evidence that any of the circumstances surrounding the presentation of the array were unduly suggestive in any way to the witness regarding whom he should identify.

As for Mr. Perez, the evidence showed that he was identified as a possible victim of identity fraud incidental to an interview that Agent Thomas was conducting of another witness. [T. 13, 49].  Agent Thomas later met with Mr. Perez on September 10, 2012, to interview him. [T. 15, 45, 50]. At that interview, Agent Thomas presented Mr. Perez with the photographic array attached as the government's Exhibit 1. [T. 14]. At that time, Mr. Perez identified Defendant as the person to whom he gave his identifying information. [Id.]. There was no evidence that any of the circumstances surrounding the showing of the array to the witness were suggestive as to whom the witness should identify.

---

[1] Reference to the transcript of the evidentiary hearing, [Doc. 24], will be made as follows: "[T. (Page)]."

**B.  Ms. Fuller**

The testimony of Ms. Fuller revealed that she contacted Defendant's husband about information she saw on a bulletin board in early 2012. [T. 65]. She provided Mr. Ford with her name, address, phone number, and Social Security number. [T. 66]. Later, Ms. Fuller was picked up by Mr. Ford and taken to church services in Decatur where she first met Defendant. [Id.]. She was at these services for about four hours. [T. 67]. She also testified she was picked up by Defendant for church services a second time and taken to a private residence. [Id.]. She also spent about four hours with Defendant on that occasion. [T. 68]. Thereafter, she met with law enforcement in August of 2012 and was asked if she could recognize anyone in a photo array. [T. 72]. She was able to identify picture number four in the array as Defendant "Ms. Cora." [T. 69-70]. No hinting or pointing or coaxing were engaged in by the agents. [T. 72]. After her initial verification, Ms. Fuller was shown a single photograph of Defendant, the same photograph included in the array. [T. 71]. See Gov. Ex. 4.

On cross examination, Ms. Fuller was asked if she told the agents she was not sure that the picture was Defendant. [T. 79]. She responded, "I'm not sure," which is an ambiguous response that the undersigned understood as meaning she was not sure if she told the agents she was unsure. [Id.]. She followed this up by stating

4

AO 72A
(Rev.8/82)

"I would say it looks like her, but I'm not quite sure if it was." [Id.], a statement she repeated several times in her testimony. Then, later, she testified, "I knew the face, but I wasn't quite sure what name went with the face." [T. 80]. She later admitted that, after she was shown the array and identified Ms. Cora as picture number four, she may have said she was unsure, and thereafter was shown a single photograph of Ms. Cora, again testifying that she thought the picture "look[ed] like her, but [she] wasn't sure." [T. 81-82].

### III.
### The Applicable Law

A defendant has a due process right to exclude identification testimony that results from unnecessarily suggestive procedures that may lead to an irreparably mistaken identification. Stovall v. Denno, 388 U.S. 293, 301-02, 87 S. Ct. 1967, 1972 (1967), overruled on other grounds by Griffith v. Kentucky, 479 U.S. 314, 107 S. Ct. 708 (1987). But an identification derived from unnecessarily suggestive procedures need not be excluded if, under the totality of the circumstances, the identification is reliable. Manson v. Brathwaite, 432 U.S. 98, 114-16, 97 S. Ct. 2243, 2253-54 (1977).

A two-step analysis is applied to determine the admissibility of identification testimony. First, the defendant must show that the identification procedure was impermissibly suggestive. Second,

AO 72A
(Rev.8/82)

if impermissibly suggestive, the court must then determine, under the totality of the circumstances, whether the testimony was nevertheless reliable. Neil v. Biggers, 409 U.S. 188, 198-200, 93 S. Ct. 375, 381-82 (1972); Cikora v. Dugger, 840 F.2d 893, 895 (11th Cir. 1988). In other words, even despite an unduly suggestive identification procedure, testimony concerning an eyewitness' identification may be admissible if, under the totality of the circumstances, the witness' identification of the defendant is reliable. Brathwaite, 432 U.S. at 114-17, 97 S. Ct. at 2253-54; Hudson v. Blackburn, 601 F.2d 785, 788 (5th Cir. 1979);[2] United States v. Gidley, 527 F.2d 1345, 1350 (5th Cir. 1976).

The Supreme Court set forth five factors to be considered in making the determination of reliability in Biggers, 409 U.S. at 199-200, 93 S. Ct. at 382. These factors include the opportunity of the witness to view the suspect at the time of the crime, the witness' degree of attention at the time, the accuracy of his prior description of the suspect, the level of certainty of the identification, and the time between the crime and the identification. Id.

---

[2] Decisions of the Fifth Circuit rendered on or before September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

AO 72A
(Rev.8/82)

**IV.**
**Conclusions of Law**

**A.   Mr. Ponder and Mr. Perez**

With respect to Mr. Ponder and Mr. Perez, the second step in the <u>Biggers</u> analysis need not be reached. The photographic array was not suggestive. It contains six photographs of African-American women of approximately the same age. The backgrounds and the size of the photographs are the same. An inspection of the arrays shows that nothing in the arrays would suggest that any one of the photographs should be selected over any of the others. <u>See</u> Gov. Ex. 1, 2.

Furthermore, the procedures employed in presenting the arrays to Mr. Ponder and Mr. Perez were not suggestive. In both cases, the agents presented the array to the witnesses and asked them if they recognized any of these individuals as the person they met and gave their identifying information to. [T. 39-40, 53]. There is no evidence that anything was done that would have called attention to any particular photograph over any of the others or tainted the identification in any way.

Accordingly, as to Mr. Ponder and Mr. Perez, the motion to suppress identification should be **DENIED**.

7

**B. Ms. Fuller**

Defendant argues that the identification of her by Ms. Fuller was unreliable because the array was unduly suggestive and because it was tainted by the use of Defendant's single photograph and was otherwise unreliable. [Doc. 27 at 8-9].

First, the undersigned concludes, as concluded above with regard to Mr. Ponder and Mr. Perez, that the array initially presented to Ms. Fuller was not unreasonably suggestive. The evidence shows that the witness identified Ms. Ford from the array, *before* she was shown the single photograph. And, while Ms. Fuller expressed some uncertainty about her identification, that uncertainty is not reflective of undue suggestiveness of the array. She testified that she believed picture number four in the array looked like the lady who was at the church services with her on two occasions, for four hours each, even though she was unsure about her name. [T. 80].

As with Mr. Ponder and Mr. Perez, nothing done by the agents in presenting the array to Ms. Fuller created any substantial risk of misidentification. They presented the array to her "and sat back and asked me did I recognize anyone." [T. 72]. The agents did not provide any hints, pointing, or coaxing in any way designed to influence Ms. Fuller to identify photograph number four. [Id.].

8

Nor was her identification tainted by the fact that the agents showed Defendant a single copy of the same photograph she had identified as number four on the array. First, her identification from the array was made before she was shown the single photo. Second, the single photo was the same photograph that was in the array that she had already identified as Defendant.

Although Ms. Fuller expressed some uncertainty in her identification, any uncertainty was not due to the suggestiveness of the array. Furthermore, on the issue of reliability, I would conclude that her identification was ultimately reliable, without regard to suggestiveness, based upon the fact that she had encountered Defendant on two occasions—on one of which she was picked up by Defendant and brought to the church services—each of which lasted four hours. Ms. Fuller had extended contact and exposure to Ms. Ford upon which to make her identification of the woman she knew as "Ms. Cora." Any uncertainty she expressed goes to the weight to be accorded to her testimony, but does not render her identification unreliable or inadmissible.

## V.
## Conclusion

In conclusion, the undersigned recommends that the motion to suppress identification, [Doc. 16], be **DENIED**.

9

It appearing that there are no further pretrial or discovery matters to bring before the undersigned, it is therefore **ORDERED** that this **CASE** be and is hereby **CERTIFIED** as ready for trial.

**SO REPORTED AND RECOMMENDED**, this 8th day of April, 2013.

 s/ *E. Clayton Scofield*
E. Clayton Scofield III
UNITED STATES MAGISTRATE JUDGE