# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| CORA CADIA FORD, | : | MOTION TO VACATE |
| BOP ID 64099-019, | : | 28 U.S.C. § 2255 |
|   Movant, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:16-CV-2260-TWT-CMS |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION NO. |
|   Respondent. | : | 1:12-CR-297-TWT-CMS |

## FINAL REPORT AND RECOMMENDATION

This matter is before me on (A) federal inmate Cora Cadia Ford's *pro se* motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct her sentence [125], (B) the government's response [128], and (C) Ford's additional filings, comprising (1) a reply [129], (2) a "Request for the Clerk of the Court to Enter Notice of Default Pursuant to Federal Rule of Civil Procedure 55(a)" [130], (3) a "Mandatory Judicial Notice" [131], (4) a "Motion to Challenge Subject Matter Jurisdiction of the Above Named Court and Demand to Vacate the Unlawful Conviction" [132], (5) a "Motion for Status" [133], and (6) a "Second Request Motion for Status" [134].

For the reasons that follow, I **RECOMMEND** that this Court **DENY** Ford's § 2255 motion and **NOT ISSUE** a certificate of appealability, and I **DENY** Ford's other motions.

## Procedural History

In September 2012, a grand jury indicted Ford for mail fraud (ten counts), aggravated identity theft (ten counts), and false claims (ten counts). *See* [1]. As the United States Court of Appeals for the Eleventh Circuit summarized it, Ford "operated a complex fraud scheme over a period of many years – acquiring personal information under false pretenses, often from victims who were homeless or mentally or physically disabled, and then using that information to file false tax returns, and pocket the resulting refunds." *United States v. Ford*, 784 F.3d 1386, 1390 (11th Cir. 2015).

Ford pleaded not guilty. *See* [4].

In 2013, Ford was convicted on all counts. *See* [91]. As the Eleventh Circuit described it, "the evidence at the four-day trial was voluminous. *Ford*, 784 F.3d at 1390. Almost half of the victims called to testify by the government "corresponded to the fraudulent tax returns charged in the indictment." *Id.* The others were "victims of uncharged, but substantially similar, conduct." *Id.* Every victim's return "listed Ford's name and business, 'Genesis Tax Service,' on the 'paid preparer' line." *Id.* "The refund checks for those returns were either deposited in Ford's bank account or cashed at a check cashing facility." *Id.* Additional evidence presented by the

government included: Ford's personal tax returns (showing addresses shared with the fraudulent returns and listing a homeless man as Ford's dependent); the testimony of an investigative reporter and a redacted videotape of his report (showing Ford requesting the personal information of an undercover reporter posing as a homeless man); and summary charts prepared by an IRS agent (showing U.S. Treasury check deposits into Ford's bank account and tax returns prepared by Ford and her business). *Id.* at 1391.

Ford was sentenced, *inter alia*, to a "total sentence imposed of 111 months imprisonment." [105] at 2.

Ford appealed, arguing that:

> (1) the district court erred in declining to suppress several out-of-court identifications as unduly suggestive; (2) counts in her indictment were multiplicitous and thus in violation of the Double Jeopardy Clause of the Fifth Amendment; (3) several pieces of evidence were improperly admitted under Rules 403 and 404(b) of the Federal Rules of Evidence; (4) the government's summary charts, admitted in evidence at trial, were irrelevant and contained impermissible hearsay; and (5) the district court erred in estimating the loss amount and number of victims for the purpose of enhancing her sentence.

*Ford*, 784 F.3d at 1391. The Eleventh Circuit rejected each of these arguments and affirmed Ford's conviction and sentence. *See id.* at *passim*.

In June 2016, Ford filed the § 2255 motion now before the Court. *See* [125]. The government responded and conceded that Ford's motion was timely-filed. *See* [128] at 2 n.1.

## **Discussion**

Because Ford is proceeding *pro se*, I have construed her motion liberally. *See, e.g.*, *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

Ford lists three nominal grounds for relief, labeled: (1) "Ineffective Assistance of Counsel, Unconstitutional Trial Tax"; (2) "Ineffective Assistance of Counsel, Attorney Misrepresentation, Conflict of Interest, Actual Innocence"; and (3) "Ineffective Assistance of Counsel, Abuse of Discretion, Due Process Violation under the Administrative Procedures Act, Lack of Jurisdiction." [125] at 4-7. *See also* [125-1] at 2 (slightly restating these three "grounds for relief"). Because Ford's labels bear little to no relation to the "supporting facts and law" that she offers, *see* [125-1] at *passim*, however, I will simply go line-by-line through Ford's brief, addressing each argument she makes in turn.

Ford contends that she "was, in effect, punished for exercising her Sixth Amendment rights to a trial by jury, a trial tax." [125-1] at 6 (emphasis

in original).  By this Ford means that she received a higher sentence because she went to trial rather than plead guilty.  It is, however, a basic feature of the American criminal justice system that defendants who admit their guilt and accept responsibility for their crimes will receive lower sentences than similarly situated defendants who deny their guilt and proceed to trial.  These are entirely appropriate factors for consideration in sentencing.  *Cf. United States v. O'Brien*, 560 U.S. 218, 227 (2010) ("Sentencing factors traditionally involve characteristics of the offender – such as recidivism, cooperation with law enforcement, or acceptance of responsibility."); U.S.S.G. §3E1.1(a) ("If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.").

Only in rare instances where a court vindictively imposes a greater sentence for the purpose of punishing a defendant for exercising her right to trial (or retrial) are her constitutional rights violated.  *See, e.g.*, *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 799 (1989).  There is nothing in the record to indicate that occurred here.  The sentencing judge's remarks about Ford's failure to show remorse at any point before she offered her allocution at sentencing and her decision to put the government to its burden of proof at

trial were statements of fact. *See* [120] at 105. Moreover, these statements were made as the sentencing judge explained why he was denying the Defendant's request for a non-guideline sentence. *See id.* Moreover, Ford was ultimately sentenced at the bottom of the applicable guideline range. In short, nothing in the record indicates that the sentencing judge relied on unconstitutional factors in sentencing Ford. This argument is meritless.

Ford also contends that the trial court "us[ed] inappropriate enhancements" based on its determinations of the number of victims and loss amount, *see* [125-1] at 6-7, and "elements that were not found beyond a reasonable doubt by the jury, *see id.* at 12. Ford contends this is a "fundamental miscarriage of justice," adequate to overcome any "procedural default." *Id.* at 7. But this argument is meritless because Ford raised these same sentencing issues on direct appeal, the Eleventh Circuit rejected them, and Ford may not raise these issues again in collateral proceedings. *See United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("once a matter has been decided adversely to a defendant on direct appeal, it cannot be relitigated in a collateral attack under § 2255," including on "a different, but previously available, legal theory").

Ford also contends that she received ineffective assistance of counsel because "she did not understand the consequences she would face by taking her case to trial" and thus missed an opportunity to accept a plea offer promising her "a much lesser sentence." [125-1] at 8.  *See also id.* at 9 ("Allowing Ms. Ford to enter into a trial under such circumstances without advising her of the possible harsher sentence imm[i]nently waiting in such a racially bias[ed] situation, was clearly within the spectrum of ineffective counsel.").  The government denies making a plea offer as Ford alleges, but notes that even if it had made such an offer, Ford's other allegations conclusively indicate that she would have rejected it.  *See* [128] at 12-15.  For example, Ford submitted an affidavit with her § 2255 motion in which she "continue[s] to claim [she is] Actually Innocent of the charges." [125-2] at 1.

"To prove prejudice in the context of a foregone guilty plea, [the defendant] must satisfy the three-part test the [Supreme] Court articulated in *Lafler v. Cooper*, [566 U.S. 156 (2012)]." *Osley v. United States*, 751 F.3d 1214, 1223 (2014).  One part of that test requires a showing "that but for the ineffective assistance of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea . . . .)." *Lafler*, 566 U.S. at 164.  Here, it is clear

7

from Ford's continuing protestations of actual innocence that she would have rejected any plea offer.  *Cf. Osley*, 751 F.3d at 1224 ("Osley's claim that he would have pled guilty had he been properly informed is also undermined by his repeated claims of innocence."); *Pericles v. United States*, 567 F. App'x 776, 782 (11th Cir. 2014) ("In light of [the prisoner's] insistence that he is innocent of the offense, there is no reasonable probability that he would have pled guilty if, before [he] pled, his attorney had reviewed his criminal history.").  This argument is thus meritless.

Ford contends that her counsel provided ineffective assistance "through . . . failure to disclose . . . that counsel[']s first duty is to the courts, not the client," which constituted "a conflict of interest."  [125-1] at 11; *see also id.* at 14-15 ("It was a conflict of interest because she could not properly advise Ford as an officer of the court, because she was operating from both sides of the bench.").  Ford argues that "[t]his conflict of interest between Ford and her counsel created a violation of Ford's substantive right to due process, and effective assistance of counsel, it constitutes fraud, misconduct, and concealment of evidence."  *Id.* at 15 (text unaltered).  This argument is frivolous.

To show a violation of the Sixth Amendment, "a defendant must establish that an actual conflict of interest adversely affected [her] lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). The conflict cannot be merely possible, speculative, or hypothetical. *Reynolds v. Chapmen*, 253 F.3d 1337, 1342 (11th Cir. 2001). "Membership in the bar is a privilege burdened with conditions," and when an attorney becomes a member of the bar "he [becomes] an officer of the court, and like the court itself, an instrument or agency to advance the ends of justice." *In re Snyder*, 472 U.S. 634, 644 (1985) (internal quotation marks and citation omitted. As an "officer of the court," a lawyer is subject to disciplinary action by the court. *See id.* But attorneys do not inherently represent the court, and, contrary to Ford's argument, there is no actual conflict of interest in an attorney representing a criminal defendant. Ford has thus demonstrated no constitutional violation.

Ford next contends that her counsel provided ineffective assistance because she "showed up for trial completely unprepared to offer a defense." [125-1] at 13. Ford states that her "counsel did not subject the prosecution's case to any meaningful adversarial testing." *Id.* at 14. In support of this argument, Ford claims that her counsel presented no evidence and called no

9

witnesses. *Id.* at 13 ("In fact there was no defense at all. She did not call a single witness at all.") This argument is flatly contradicted by the trial record. *See* [116] at 47-67 (presentation of three defense witnesses); *see also* [114] at *passim* & [115] at *passim* (extended cross-examinations of the government's witnesses).

Ford contends that her "trial was "actually a bankruptcy proceeding" and that her attorney "failed to disclose who the true creditor party [was]." [125-1] at 13. Ford further contends that, because this was a "bankruptcy proceeding," this Court "did not have jurisdiction to hear this case." *Id.* at 14. These arguments are wholly frivolous. Ford was charged and tried for violating federal criminal statutes through conduct that she undertook in this federal district. This Court plainly had jurisdiction over the government's criminal prosecution of Ford.

Ford contends that she is "actually innocent" because she "was not the one that filed the fraudulent tax returns that were presented at trial." *Id.* at 16. Ford's "evidence" for this is that Electronic Filing Information Number ("EFIN") on the tax returns presented at trial "was not assigned to Ford's

name or business." *Id.*[1] Ford further argues that "[a]ny of her employee[]s had access to [her check cashing account] and could cash checks," so "[t]he fact many tax returns, some alleged to be fraudulent[,] were cashed through that account, did not prove guilt or knowledge by Ford." *Id.* at 17. But the "threshold requirement" for stating an "actual innocence claim is "*new evidence*" sufficient to persuade the district court that "no juror, acting reasonably, would have voted to find [her] guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995) (emphasis added). Because Ford has identified no "new evidence," only evidence that was known to her before her trial, she has failed to meet this standard.

Ford suggests that the Administrative Procedure Act was applicable to her prosecution because it involved "[j]udicial review of agencies of the United States Federal government, for abuse of discretion," namely, an investigation initiated by the Internal Revenue Service. *See* [125-1] at 18. This suggestion is frivolous.

---

[1] There is evidence in the record, however, that the EFINs on each of the fraudulent tax returns were "only controlled by Cora Ford" or "operated through" her. [120] at 6.

Ford contends that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), *see* [125-1] at 18, but she identifies no specific evidence that the government allegedly wrongfully withheld. This argument is meritless.

Ford contends that "the indictment in this case is an unlawful illegal counterfeit instrument" and that it "fails to disclose the entire case was a taxable security." *Id.* at 19. This contention is frivolous.

Ford's assertion that "[c]orporate government is operating under public policy in order to administer the bankruptcy for the benefit of bankster creditors and IRS" is patently frivolous as well. *Id.* at 19.

Because none of Ford's arguments has merit, I recommended above that her § 2255 motion be denied.

I also recommended above that Ford be denied a Certificate of Appealability because she does not meet the requisite standard. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (requiring a two-part showing (1) "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," *and* (2) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling"); *see also Spencer v. United States*, 773 F.3d 1132, 1138

(11th Cir. 2014) (en banc) (holding that the *Slack v. McDaniel* standard will be strictly applied prospectively).

No evidentiary hearing is required because "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). *See also Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because the affidavits submitted by [the defendant] amount to nothing more than mere conclusory allegations, the district court was not required to hold and evidentiary hearing on the issues and correction denied [the defendant's] § 2255 motion."); *Holmes v. United States*, 826 F.3d 1545, 1553 (11th Cir. 1989) ("this rule does not require that the district court hold an evidentiary hearing every time a § 2255 petitioner simply asserts a claim of ineffective assistance of counsel").

Finally, I denied Ford's other motions because (1) a federal prisoner has no right to a "notice of default" in a collateral proceeding, (2) Ford has raised no non-frivolous argument that this Court lacked jurisdiction over her criminal prosecution, and (3) the issuance of this Final Report and Recommendation adequately responds to her two "motions for status."

I **DIRECT** the Clerk to terminate the referral of this case to me.

**SO RECOMMENDED, ORDERED, AND DIRECTED**, this 30th day of July, 2018.

_____
CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE